UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| Paul Sellors and Elizabeth Sellors, | Court File No.: 04-CV-02895 |
| | (RHK-AJB) |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' REPLY MEMORANDUM** |
| Legionaries of Christ, an organization, Legion of Christ, Incorporated, a New York corporation, FAMILIA USA, Inc., a New York corporation, FAMILIA, a Minnesota non-profit Corporation and Anthony Bannon, | |
| Defendants. | |

The settlement in this case, made before this Court on December 13, 2004, is straightforward. The main terms of the settlement are: both sides have an equal right to use the copyrighted works created by the Sellors; the Defendants pay Plaintiffs $60,000; the Defendants retain the trademark FAMILIA; and the parties execute mutual releases.

The implementation of the part of the settlement regarding the copyrights involves two steps. The first step requires that the Sellors assign to Defendants the Sellors' ownership in the copyrights. The settlement documents drafted by the Sellors provide for an unconditional assignment of their ownership of the copyrights as agreed. Of course, the Defendants are not seeking any restrictions on their ownership and, hence, the language of the proposed settlement documents regarding the assignment is not in issue. Under the second step the Defendants grant the Sellors a license to use the copyrights in any manner that the Sellors see fit and to make and use derivatives of them. The settlement documents drafted on behalf of the Sellors provide for

such a license but the Defendants are demanding, contrary to the December 13, 2004 settlement, several substantial restrictions on the Sellors' right to use the works.

The license granted to the Sellors, as described by the Court, is "…a paid up license on the copyrights to use the copyrights in any manner they see fit or any derivative works as well." (T.4)  The settlement documents drafted on behalf of the Sellors provide for such a license but the Defendants' documents provide that the Sellors' license is subject to all of the following:

1. Territory:  the Sellors' license is limited to the U.S. and Canada;

2. Versions:  the Sellors' license is limited to the version of the works that happen to be in their possession;

3. English Only:  the Sellors' license is limited to publications made in English;

4. Management Requirement:  the Sellors can only use the works in connection with programs managed and controlled by them;

5. Statement of Intention:  the Sellors' license is to be interpreted and implemented consistent with goals contained in a vague statement of intention;

6. Deletion Requirement:  the Sellors' use is conditioned on their deleting any material that even suggests a connection to the Familia Entities or the programs conducted by them; and

7. Additional Affirmative Obligation:  in order to use the works, the Sellors must take reasonable steps to insure that the materials distributed by them under the license or that their promotion of them does not suggest or imply that the Sellors' programs are associated with the Defendants or their associated movement called Regnum Christi.

If the Sellors breach any of the restrictions and conditions described above, the Defendants are entitled to terminate the Sellors' copyright license.

None of the restrictions and conditions on the Sellors' license are found in the transcript of the settlement proceedings and the Defendants do not contend otherwise.  Rather, Defendants

claim that the restrictions proposed by them are implied by the mere fact that the Sellors' rights arise under a license. There is no basis in law or fact for Defendants' assertion that the conditions and restrictions proposed by them arise by implication. The parties are bound by the stipulations made by them in the presence of the court. Restatement (Second) of Contracts, §94. No term can be added to a contract by implication that contradicts an express term of the agreement. First Nat. Bank of Breckenridge v. Thorpe Bros., 179 Minn. 574, 229 N.W. 871, 873 (1930); Finke v. State, 521 N.W.2d 371, 374 (Minn. App. 1994); Restatement (Second) of Contracts, §203. In this situation, all of the conditions and restrictions that Defendants seek to impose on the Sellors' license are contrary to the plain and unambiguous stipulation, made by the parties before the Court, that the Sellors shall have a license to use the copyrights in any manner that they see fit.

Under the license agreement proposed by Defendants, if the Sellors' breach any of the aforementioned conditions, Defendants are entitled, to terminate the license. Nothing in the transcript describes the Sellors' license as one terminable by Defendants. To the contrary, it is described as lasting for the life of the copyrights. (T.4) If the Defendants were given a right to terminate the Sellors' license (and Defendants' proposed document provided many grounds for termination), Defendants might use threats of termination to restrict the Sellors work. In addition, the Defendants might sue the Sellors not only for breach of contract but also copyright infringement. See Evolution, Inc. v. Suntrust Bank, 342 S. Supp. 943, 953 (D. Kan. 2004). In short, the termination provision is contrary to the terms of the settlement and is an instrument that the Defendants' could use to restrict the Sellors' operations.

The settlement provides that the Defendants retain the mark, FAMILIA. This provision is included in the documents of both sides. However, Defendants' Settlement Agreement adds

the provision that the Sellors cannot in any fashion "suggest a connection, affiliation, or association with any of the Defendants in the Litigation or their affiliated entities. . . ." This language expands by contract the rights of the Defendants as the owner of the mark and the corporate names.  Under the Lanham Act, 15 U.S.C. §§1051-1127, and state law of unfair competition, Defendants have ample protection against the Sellors using the mark or a name that misleads the public using the materials and services in question.  The language of Defendants' proposed Settlement Agreement expands their substantial rights under state and federal law. This expansion is not provided in the settlement.

   The Defendants' motion papers contend that the Sellors violated the settlement agreement by discussing its terms with third parties.  This statement is false.  The Sellors admit that they told about five people (most of whom were their children and relatives)  that the case had been settled and that they would be resuming their apostolate under a different name. However, contrary to repeated assertions in Defendants' papers, the Sellors did not discuss the terms of the settlement with anyone or say that they had won the lawsuit.

   On about December 2016, 2004, the undersigned listened to a voicemail left by Christopher Cuneo, one of the attorneys for Defendants.  In the message, he claimed that Paul Sellors had been calling people connected with FAMILIA and saying that the Sellors had won the lawsuit and they were getting Familia back. I called Paul Sellors and he immediately denied making such statements.

   Paul Sellors admits that told a limited number of people that the settlement permitted him and his wife to resume their apostolate.  However, Paul Sellors denies that he discussed the specific terms of the settlement with anybody.  However, because Paul Sellors did say to a few people more than the sentence specified at the December 13, 2004, the undersigned advised Mr.

4

Cuneo that Defendants could make a fair response to them and confirmed this agreement in a letter to Mr. Cuneo.

The Defendants did not confine their response to those who had spoken with the Sellors. Instead, Scott Henschell, the manager of Familia, on December 27, 2004, sent an e-mail to all Familia Regional Coordinators and District Directors, an international audience, comprising about one hundred people. In the e-mail, Mr. Henschell falsely charged Mr. Sellors with disseminating inaccurate information about the settlement. The e-mail also attempts to explain certain terms of the settlement but does so inaccurately. The inaccurate statements of Mr. Henschell, which he sent to many, are grossly disproportionate to the comments that Mr. Sellors made to a few individuals. As a result, the Defendants are in no position to say that they have been prejudiced in any manner.

The undersigned was unaware of the Defendants' source regarding the alleged statements made by Mr. Sellors regarding the settlement until the undersigned received Defendants' response to this motion. Defendants never disclosed their source to the undersigned but indicated that Mr. Sellors had spoken with many people. It appears from the papers submitted by Defendants that Defendants' source was nothing more than rumors allegedly heard by Scott Henschell, Familia's manager, and that he never had any first hand information.

Paragraph 3 of the Affidavit of Christopher Cuneo, one of Defendants attorneys, states in part as follows:

> The Familia Entities received reliable information that on Wednesday, December 15, 2004, Paul Sellors initiated a call to a third party to which he apparently said directly or by implication, that the Sellors had won the lawsuit, that the Sellors had control of FAMILIA again, and that the Sellors now own the copyrights to the programs. As could be expected, the Sellors' misrepresentations about the terms of the settlement were immediately re-published within members of Church organizations.

5

No source is identified in the Affidavit. Instead, the Affidavit asserts that the Familia Entities had "received reliable information." Finally, in their papers submitted in this matter, the Defendants provide a source for their charges regarding Mr. Sellor's alleged statements. The only source identified by Defendants in their submission is John Symanski. The only description of the information allegedly coming from Mr. Symanski is in an e-mail sent by Mr. Henschell to Axel Diaz, dated December 20, 2004, a copy of which is attached to the Affidavit of Stephen Rathke, Esq. Mr. Henschel is Familia's manager and Mr. Diaz works for an entity controlled by the Legion. It appears from the e-mail that Mr. Henschell did not speak directly with Mr. Symanski. Rather, Mr. Henschell reports what unidentified people told him that John Symanski allegedly said to someone at a Regnum Christi retreat. In other words, Mr. Henschell is reporting second or third hand information. One thing that Mr. Henschell got right was in the subject of his e-mail where he describes the information in the e-mail as rumor. So much for the Defendants' assertion that the Familia Entities had "reliable information" when they accused the Sellors of violating the settlement agreement.

Paul Sellors denies every point made in Mr. Henschell's e-mail. First, Paul Sellors did not call Mr. Symanski as asserted in the Henschell e-mail. Rather, Mr. Symanski called Mr. Sellors. Mr. Symanski is an acquaintance of the Sellors who has a son in the Legion's seminary. The Sellors had not spoken with Mr. Symanski for months prior to their phone conversation on about December 16, 2004. Mr. Symanski asked Paul Sellors several questions about the Sellors relationship to Familia. Mr. Sellors made none of the statements attributed to him in the Henschell e-mail. Rather, Mr. Sellors described the nature of the lawsuit and stated that it had been settled.

In summary, the only information that the Defendants have presented to support their accusations against Paul Sellors is suspect. Paul Sellors admits telling a few people that the lawsuit had been settled and that the Sellors' had plans to resume their apostolate. However, he has not discussed the terms of the settlement with anyone. To the extent that the Defendants are seeking any relief on account of Mr. Sellors' comments, the request should be denied.

                                            KRAUSE & ROLLINS, CHTD.

March 30, 2005.                           By: s/David E. Krause
                                                 David E. Krause (#58117)
                                                 James B. Hovland (#47491)
                                                 310 Groveland Avenue
                                                 Minneapolis, MN 55403
                                                 Telephone: (612) 874-8550
                                                 Facsimile: (612) 874-9362

                                                 ATTORNEYS FOR PLAINTIFFS