## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Paul Sellors and Elizabeth Sellors, | Case No. 04-2895 RHK/AJB |
| Plaintiffs, | |
| vs. | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE THE SETTLEMENT AGREEMENT** |
| Legionaries of Christ, an organization, Legion of Christ, Incorporated, a New York City corporation, FAMILIA USA, Inc., a New York corporation, FAMILIA, a Minnesota non-profit Corporation and Anthony Bannon, | |
| Defendants. | |

---

Defendants submit this Reply Memorandum in support of their Motion to Enforce the Settlement Agreement. This Memorandum is intended to supplement Defendants' previous Memorandum and reflects the fact that the parties have resolved some of the language differences during the last week. Unfortunately, several issues remain. The Sellors' version is shorter, leaving a number of significant issues unresolved. Defendants prefer to specifically address the issues which could create future misunderstandings and conflict. With that in mind, Defendants respectfully request the court to review the differences and determine whether the language request by Defendants is consistent with the agreement reached in court on December 13.

I.

SETTLEMENT AGREEMENT

Three differences remain which are set forth in the following comparison chart:

| **DEFENDANTS' DRAFT** | **SELLORS' DRAFT** |
|---|---|
| 3. License (Attachment 1): "... a nonexclusive, paid-up license to make use of the Works."<br><br>Transcript: *"... a paid up license on the copyrights and a royalty free license into the future for the life of the copyright to use the copyrights in any manner they see fit or any derivative works as well"* (T. at 4) | 3. License (Attachment 2): "... a nonexclusive, paid-up, royalty free license exploit the Works as though they were the owners of them, including, but not limited to the right to make or have made, to use, to publish, to sell to distribute and to make derivatives of the Works ...." |
| 4. Marks (Attachment 3): Sellors agree not use FAMILIA mark; "or in any other fashion suggest a connection, affiliation, or association with any of the Defendants... or any endorsement or sponsorship ..."<br><br>Transcript: *"... will have a name that's not similar to the name Familia or confusingly similar to that name."* (T. at 5-6) | 4. Marks: quoted language omitted. |
|  |  |

In paragraph 3 of the Settlement Agreement, the FAMILIA Entities grant a license to the Sellors. The terms of the license are set forth in detail in the License Agreement. The Sellors use of colorful language ("exploit") and claim of co-ownership is inconsistent with both the agreement and the words used by the court to describe the settlement (See Attachment 1). The Sellors argue that their version is designed to avoid future controversy. Yet, the Sellors' version of paragraph 3

contains language which is both unnecessary and also an invitation to a future dispute. The court should adopt Defendants' version (Attachment 2) which is directly from the court transcript.

Paragraph 4 of the Settlement Agreement concerns the use of marks. Defendants wish to add language which is entirely consistent with the court statement that confusion must be avoided (Attachment 3) (T. 5-6). The Sellors reject this language, stating that the Lanham Act and other statutes provide sufficient protection. Defendants recognize, of course, that section 1125 (a) of the Lanham Act and other statutory protection exists. Defendants want specific language in the Settlement Agreement, consistent with statutory protection, to inform the Sellors that they must avoid acts which cause confusion. In exchange for cash and a License Agreement, the Defendants expect this protection, and the court provided that protection when the agreement was stated. Defendants' language is designed to inform the Sellors that they must take steps to avoid confusion. The Sellors' resistance to this clause does not bode well for the future.

## II.

## LICENSE AGREEMENT

The differences in the License Agreement are illustrated in the following chart:

LICENSE   AGREEMENT

| **DEFENDANTS' DRAFT** | **SELLORS' DRAFT** |
|---|---|
| III. License (Attachment 5): FAMILIA grants a "paid-up, royalty-free, non-transferable license to utilize the English language content of the versions of the Works now in the Sellors' possession..." in the US and Canada.<br><br>Describes goals of distinctiveness and clarity of origin. | III. License (Attachment 4): FAMILIA grants a "paid-up, nonexclusive, world-wide license to exploit the Works as though they were the owners...<br>including ... the right to make, have made, use, publish, sell and distribute the Works and to make derivatives and modifications of the |

| | |
|---|---|
| Requires deletion of any reference to Defendants;  no translation.<br><br>Sellors materials must clearly state Sellors as source.<br><br>Sellors cannot promote program where FAMILIA has operated or is operating or at Regnum Christi programs or events.<br><br>Sellors may assign only to entity owned or controlled by them and cannot sub-license. | Works."  Sellors may assign to a corporation controlled by them. |
| IV.  Derivatives (Attachment 6): No substantive difference except Sellors cannot translate. | IV.  Derivatives: No substantive difference except no prohibition re translation. |
| VII.  Miscellaneous (Attachment 7): Contains provision for breach. | VII.  Miscellaneous: No provision for breach. |

Statement of Intention and Goals.  The Sellors object to the following statement of intentions and goals included in Defendants' version:

> It is the intention of the parties that each of the Sellors (or an entity owned and controlled exclusively by them) and Familia USA advance the efforts to help families live their vocation to marriage and parenthood in a manner consistent with their Catholic faith.  The license is intended to provide to the Sellors a starting point in their development of materials based on the teachings of Pope John Paul II that will be used in their programs.  The ultimate goals of the parties are (a) that while the concepts expressed in the material utilized by each are similar, the materials themselves will ultimately be sufficiently distinct in their organization and manner of expression so that they offer a choice to potential recipients of the respective services of the parties, and (b) that the materials and the programs are present in a fashion that makes clear the source of the services and avoids any implication of connection with or sponsorship of the other.  This license shall be interpreted and implemented in a manner consistent with the aforementioned goals.

(Attachment 5).  The Sellors fail to articulate a basis for their objections other than the fact that the court did not use these precise words at the court appearance.  Obviously, these goals are consistent

with the settlement. It is hoped that no court ever has to address any of these issues again. If disputes arise, however, the court should have the opportunity to review this paragraph in order to enable the court to reach a resolution.

<u>The license applies to United States and Canada</u>. Defendants' version (Attachment 5) restricts their license to the United States and Canada because that is where the Sellors engaged in activity. Defendants have requested the Sellors to list any other countries to which they wish to expand and would consider any reasonable request. The Sellors, however, rigidly insist upon a world wide license. Defendants seek a geographic restriction only with respect to the works as they presently exist. The Sellors are free to use their derivative works anywhere they want.

<u>The license applies to English version.</u> Defendants agreed to grant a license on those materials which are on the list and were registered by the Sellors. All of these publications are in the English language. Defendants never agreed to license a translation. The Sellors apparently want to translate the English version to another language. This is not permitted by the agreement that was stated in court.

The Sellors complain that Defendants are loading the License Agreement with terms that were not contemplated on December 13th. In reality, the opposite is true. On December 13th Defendants agreed to grant a license with respect to certain specific works. The Sellors never brought up the subject of translation of those works. Even if this License Agreement is silent on this subject, the License Agreement would not give the Sellors the right to translate the license material. By stating this restriction in the License Agreement, Defendants intend only to clarify what has suddenly become an issue between the parties.

If the Sellors modify the English language version, Defendants do not object to any translation of that version. The Sellors are not, however, permitted to translate the licensed content.

<u>Management Requirement</u>. Sellors complain of the restriction which prohibits them from transferring the license to any other person except an entity managed and controlled by them. In fact, this was stated in court, and the Sellors agreed to it (T 4, 8-10).

<u>Confusion Issue</u>. The Sellors object to the following language:

> In addition to deletion of references that suggest connection to FAMILIA, all Handbooks, Study Guides, and supplements created by the Sellors pursuant to this License must clearly identify the Sellors or an entity owned and controlled by them as the source of those Handbooks, Study Guides, and supplements. The Sellors shall take reasonable steps to ensure that nothing contained in the materials produced pursuant to this license or in the promotion thereof suggests or implies that the Sellors Programs are associated with, endorsed or sponsored by the Familia Entities, Regnum Christi or any of the Defendants in the litigation.

(Attachment 5). The Sellors insist that Defendants receive ample protection from the Lanham Act and similar statutory provisions. The License Agreement, however, should specifically inform the Sellors of their obligation to avoid confusion. This was expressly stated in court where the court made the point that the Sellors "will have a name that's not similar to the name FAMILIA or confusingly similar to that name" (T. 5). All of the Works presently contain reference to FAMILIA. Defendants seek language which would simply require the Sellors to delete these types of references. Defendants cannot understand the Sellors refusal to include this language.

<u>Avoidance.</u> In an effort to avoid further disputes, Defendants suggest the following language, to which the Sellors object:

> Included in such reasonable steps is a commitment by the Sellors not to market, solicit involvement in, promote, or otherwise attempt to organize the Sellors Programs in schools, other institution, or organizations in which the FAMILIA Entities have operated or are operating their program. For the same reasons, the

> Sellors agree that they will not promote the Sellors Programs at Regnum Christi-related programs or events. It is the expressed intention of the parties to utilize this license to broaden the reach of the apostolate by seeking participants from areas that are not currently being served, as opposed to competing for the same participants. That being the case, the foregoing is the sole restriction on where the Sellors can market the Sellors Programs in the Territory. However, this restriction is a material component of the license.

(Attachment 5). FAMILIA exists and has a presence in certain places. The Sellors' organization is new and has been granted a License Agreement to give it a jump start. A lot of places exist in the United States and Canada where FAMILIA is not.

With respect to Article IV, the parties are in agreement except that Defendants want clarification relating to translation (Attachment 6). This issue is discussed above.

<u>Breach.</u> Under Article VII, Defendants wish to add the following language to paragraph 3 of that article:

> If the Sellors or any permitted assignee of the Sellors breach this License Agreement or the Settlement Agreement executed contemporaneously herewith, the FAMILIA Entities shall be entitled to terminate this License Agreement immediately. In addition, the FAMILIA Entities shall be entitled to pursue claims for damages arising from any such breach. All of the FAMILIA Entities' remedies are cumulative. If the FAMILIA Entities breach this License Agreement, the Sellors are entitled to injunctive relief remedying the breach. In addition, they shall be entitled to pursue claims for damages arising from any such breach. All of the Sellors' remedies are cumulative. Furthermore, the prevailing party in any litigation arising from or relating to the breach of this License Agreement shall be entitled to recover all costs, including reasonable attorneys' fees, incurred in connection with that litigation.

(Attachment 7). If the parties were negotiating the terms of a License Agreement, the parties would include remedies available if the Agreement is later breached. The above language is nothing more than a natural extension of the Agreement. The provisions are even handed, providing that each

parties have the same remedies. If either party breaches, the other has recourse to the court for both injunctive and a claim for damages.

## III.

## CONCLUSION

Defendants never believed that Plaintiffs had a valid cause of action. At the time this case was settled, Defendants had a motion for summary judgment before the court. Although Defendants were optimistic concerning the outcome of that motion, Defendants were also attracted to the notion of a settlement which not only resolved this dispute but future disputes. The Sellors' version fails to address many important issues which, left unresolved, will lead to controversy in the future. Defendants' version is consistent with the discussions that led to the December 13th settlement and the desire of the parties to put their dispute behind them. It should be adopted by the court and executed by the parties.

Dated: April 4, 2005.                    LOMMEN, NELSON, COLE & STAGEBERG, P.A.


BY  s/ Stephen C. Rathke
    Stephen C. Rathke, I.D. No. 89771
    Attorneys for Defendants
    2000 IDS Center
    80 South 8th Street
    Minneapolis, MN  55402
    (612) 339-8131
    FAX: (612) 339-8064


Doc. #: 313313